Good morning, Your Honor. George Telk was for Andrea Clare. A couple of housekeeping issues. First of all, I'd like to reserve three minutes. I've started my stopwatch, so I'll do the best I can to stay at seven to start with. Second of all, I'll do your best to answer our questions. That would be the best that you can do. So do that. Absolutely. Absolutely. And I apologize up front for not being a participant in Zoom. I've had some audio difficulties with my Zoom connection, and I thought it was more important that you hear me than see me. And lastly, and I don't mean it disrespectfully to the parties, I'm going to refer to the parties as Andrea and Kevin because they both share the same name, and I want to avoid some confusion. And so, Your Honor, the issue really here is that the district court summarily disposed of facts that to come to a conclusion and find that Andrea's claim was going to be dismissed on summary judgment. The court found and had no problem... Let's just jump to this here. There's a declaration that the district judge didn't let in, right? Correct. Dan Morgan. So, I mean, in terms of, even though this is the Scored Communication Act case, there's a family law component to this. I mean, these are former spouses, and this declaration comes from the paramour that the other one blames for ruining the relationship or something. Am I getting that right? No, the declaration of Dan Morgan is the IT employee of Technologize who Andrea uses to Mr. Morgan and Ms. Clare. He's not the person that Mr. Clare suspects to be the paramour? No. Okay. No. Dan Morgan is not involved with Andrea other than professionally as the IT manager. So, it got knocked out basically for saying that the expertise wasn't there. So, I guess the question is, you obviously don't have to be a PhD to be the expert. I mean, probably technically, if a world-class hacker were to give a declaration, even though they don't have any degrees, they might have the expertise to speak on any number of these. So, this is a person that was in the IT department, right, and is aware of how their IT works, has IT training. It would seem that it could have been better developed as far as that goes. But if we assume for a moment that that was wrongly excluded, does that automatically lead to the conclusion that summary judgment was improperly granted? Yes. It would have created a fact that survives Klein and Fafel because you wouldn't just have the Microsoft 365 exchange backup, basically cloud backup, but you'd also have private local server backup that is owned by Andrea. And that's really what it takes is that two-prong, if you will, because the court, Judge Bastian had no problem with the undisputed facts that Kevin was accessing her email at her law firm unauthorized, had no problem that she had demonstrated that he had access to the facility. Where he got hung up was under Klein, it talks about if you only use 365 exchange, the cloud backup, that that isn't sufficient. So, by ignoring the declaration, and I would tell your honor that there's nothing technical about that opinion because it's just factual. I don't think it's either helpful to a trier of fact, nor do I think there's any trier of fact who wouldn't understand the concept of Microsoft being separate from a private server in today's world. I think the proper remedy is getting the problem. Let me, I don't mean to jump over you, but you can't see me talking. The problem is that the Stored Communication Act is old. There's been a lot of technology since, and we've got, if you say it's the awful, and then there's a new, there's a Fourth Circuit case, Pateley versus Watts. It's not really clear, you know, I mean, I don't think it's that easy to conclude either way whether, as a matter of law, whether this is a you know, I mean, we have at the heart here, we have a marital dispute, but we also have at the heart the Stored Communications Act, even though it's not Silicon Valley Giants, or anything as far as that goes. It's a very old act, and there's been a lot of technology since, and there is tension between the cases in terms of what exactly the language means. And so, sometimes you can look at a statute and say, this is what you said, Congress, and things have evolved so much, you didn't cover that, and so you're out. Or, this is what you said, and this is what we think you meant you said. It's, I mean, how aggressive do we need to get on this? Well, that's a great question, but keep in the analysis has been that when you look at an email on an ISP, they said that that isn't sufficient for purposes of backup protection. And all the courts say, they look at whether or not, is there another version of the email that's being backed up? And that's what Dan Morgan's declaration created, is a situation where you have an ISP server backup, but you also have another version, a private server. And if you look at Kevin's motion for summary judgment, his complaint was that Andrea offered no facts to establish two separate facilities in which emails were being stored. So, even Kevin believes that, in fact, the secondary protection here, the private server... Okay, you can say even Kevin believed. Okay, you can, it's like both parties can come in and stipulate that there's a violation of the stored, the SCA. But that doesn't mean that you're right on the law. I mean, we have to be right on the law. So, I understand what you're saying. Okay, that you both agree, if it's admissible, and that it's a violation of the Stored Communications Act, we still have to be right. And the case law out there isn't as quite as neatly as you're arguing, I don't think. Well, it does, this is a privacy violation case in part, but the reality is, is that I respectfully disagree with you in that, at summary judgment, the issue for Judge Bastian, two weeks post-status conference, was to determine if there were enough facts to go forward on the case. It wasn't, the analysis wasn't whether or not, assuming Dan as to the backup server, was that sufficient under the SCA? It was, get rid of that, and since Andrea could only demonstrate the Microsoft Exchange, that wasn't sufficient. That was the analysis that was done, not the analysis that you're asking us to engage in. I understand that, but I'm just saying, okay, assume we agree with you and say, okay, that was wrong. Do we do the analysis under the SCA? You know, what if we analyze the statute, which we're capable of doing, as I'm sure you know, and we say, assuming that's admitted and assuming all of it, it still, as a matter of law, doesn't, she can't state a cause of action. We could do that, could we not? I do believe you have the authority to do that. I don't think that's consistent with the, while I agree that the circuits are, there's a split among all of the circuits, I don't believe that right now in the outcome. Well, the awful, you see people interpreting it differently. You know, I'm not, you know, I'm not stating that I have this, that I know how I would fall down, would fall on this, but it's, it's a complicated, it's a complicated analysis. I have a question, I have an additional question for you. Did, this is just, so what's the client seeking, if the, if she goes forward, what is she seeking? There is a, there is a damages component to it. Anecdotally, there's a, a state privacy claim going on. There's a restraining order. There's, there's a lot going on here as, as to Andrea being basically victimized by Kevin, which is, which is another, that's for another court. It's not for this court, but there is a damages component. Let me ask you this, did, did, did the parties, and I'm going to ask the other side too, and I mean, we're, we can still decide the case and we're going to decide it, but did you ever avail yourself to the Ninth Circuit mediators? I believe we know, I think we made, I think we indicated that we might be willing, but we didn't at the time of initiation, the posture between the parties was not such that we thought it would be successful. Okay. If that makes any sense. Now that's been a year removed and maybe, maybe we can revisit that as another issue. But at the time it, there was so much contention between Andrea and Kevin that we did not believe that that was possible. Right. I've been kind of dominating this. Let me ask my colleagues if they have questions of you. All right. I certainly, Judge Callahan, have some questions for the other side, but I'm happy to have them appear and I can ask my questions. I have one question for you. Is, is the, is this Microsoft email system similar to the Google email system in Hatley v. Watts at the Fourth Circuit considered? No, it's, it's, it's completely different because the MSN Exchange, Your Honor, is owned by the law firm. It's not outsourced. It's not a Google or Hotmail or Gmail type of account. It's actually, Andrea's law firm owns that exchange account. I understand that, but I guess just looking, forget about the backup that you would have if Dan Morgan's affidavit is found admissible, but the, does the Microsoft system in a sense have multiple backups within the system like Google has within its system as the Fourth Circuit found? I believe that there's, it's a, I believe it's a multiple backup system, Your Honor, because they cache into, into, into, into the backup system. That's my understanding. I'm just thinking if that's so, and if we agreed with the Fourth Circuit's logic, you wouldn't even need your, Andrea's law firm's own backup server because you'd have backup storage even within the Microsoft system, which is the system that Kevin accessed. That is accurate. Okay. Okay. That's all I had. I couldn't, Judge Hawkins, I couldn't understand. I mean, I want you to ask questions now if you want to. I'm afraid of the, on the time. I'm happy to hear from the other side. Okay. And then we'll be loose on the time. All right. We've taken you over. I'm at minute 12. Yeah, but no, you, you, we've gone over, not, you're not, you don't have those left. We've gone up. The count starts, the clock goes up, but I'll give you some time for rebuttal, but I want to hear from the other side and then I'll determine how much time we need for rebuttal. Okay. Thank you, Your Honor. Thank you. All right. Can we hear from the other side then, please? Good morning, Your Honors, and may it please the Court. My name is William Schroeder for Kevin Clare. Very briefly, I think this just turns on the summary judgment standard. This case started in 2018 with a different defense attorney and a different case theory. Under that theory, they submitted their cause of action and declaration saying that their server, that claim was dismissed on a 12B6. Per the circuit's standard, they were then granted leave to file an amended complaint because of the 12B6 dismissal. The second go-around, they said instead of, that they, that they had no server, the second time they said their claim was based on them, on them having a server. So... Mr. Schroeder? Mr. Schroeder? Yes, Your Honor.  Okay. Could a plumber offer an opinion that a sink in a particular kitchen had a garbage disposal? Yes, I suppose so, Your Honor. Then why couldn't Morgan offer lay testimony that there was indeed a backup? I don't think that whether there's a backup is the same as whether there's a disposal in a sink. And I don't think Mr. Morgan disclosed any qualifications other than being the employee of an IT company. And I think if you look further... If you work for an IT company, excuse me, if you work for an IT company, that is some qualifications. But you also, too, you can look at... It seems to me that what you're talking, not so much admissibility, you're talking about the weight that you give something. When you just knock something completely out, there has to be no basis for admitting it. And there can be... It's not like he was the janitor and was offering an opinion on how the IT system works. He works in IT. Your Honor, if you read the paragraph in particular in the Morgan Declaration, what it actually says is he's repeating what Ms. Clare told him about the existence of backups and servers. And if you look at Ms. Clare's declaration originally filed in the case, she says in no uncertain terms that they do not have a server. They only use the online services from Microsoft Exchange. But the motion was based on Mr. Morgan not being qualified to offer the opinions needed to substantiate their allegations that there was an access and that it met the criteria to run afoul of the code. And... I can't... Excuse me. Excuse me. Why can't we accept his observations as admissible lay testimony in terms of setting up a disputed material question of fact? Well, Your Honor, I... My understanding of the summary judgment standard is that a party can't normally create a genuine issue of material facts by materially contradicting a position they had priorly taken in the same case without explanation. That would be great. That would be great, counsel, if this is an appeal from a bench trial. But the one of the two or three standards of summary judgment is the purpose of the process is not to resolve questions of fact. It's to identify whether they exist. And I repeat, isn't Morgan entitled to observe that there was in fact a backup? Yes, he's entitled to observe that. But I don't believe that's what the paragraph actually says. And isn't that all? Isn't that all what Farley Jones or Theofil was about? Making the distinction between a routine storage in an entity and whether there's a backup. If there's not a which my colleague Judge Callahan accurately describes as not being focused primarily on reality, it's the best Congress could do at the time when they were trying to deal with this emerging technology. But Theofil simply requires that there be a backup. Morgan says there was. And that's material to the resolution of the case, isn't it? Does it sound that way? Yes, Your Honor. I again don't believe that's what Morgan says. I think he says Ms. Clare told me the following things and he repeats them. But I don't think he said that he actually did that. It's a three paragraph declaration across two pages. It says next to nothing other than a couple of declaratory statements without explanation for why they are. And certainly not for why they're the opposite of what Ms. Clare had said previously. But our argument was based on the particular words of the declaration. It doesn't look like that's what Mr. Morgan said. But if we're mistaken, we're mistaken. Go ahead. I'm sorry. This is Judge Gilman. Let me ask you the same question I asked Mr. Telquist. If in fact the Microsoft email system has its own backups, why isn't that enough whether we admit Morgan's affidavit or not? Because if the Fourth Circuit says, hey, if Google has its own backup, and if Microsoft has its own backup, that satisfies the Storage Communications Act issue. The only evidence in the record for it is the three paragraph Morgan declaration, which just has a series of statements that don't explain why they are what they are. It's a series of declaratory arguments rather than a fact basis. So the argument we made before the trial court was that's insufficient to create a question of fact. It's just a series of interrogated. But if we're wrong, then it's sufficient, then it's sufficient. But we weren't even really trying to get to those elements. We were saying that just the IT guy's declaration without an attached resume or any explanation for anything wasn't enough to create the question. That's where we were arguing the case, not at the statutory interpretation level. We didn't think that they got there with Morgan declaration alone. I think, Hatley, or Pateley, whatever, it seems to be problematic for you, as Judge Gelman has touched on in the question. You seem to rely on the language in the awful concerning remote, quote, unquote, remote computing services. But why does that language control here? Isn't it dicta? I'm not sure whether it controls your arm, and I'm not sure how it compares to the technology issue in this case, because I'm not sure that the record has sufficient evidence of technology in the case. It has an allegation in one direction that there's no server that's backed up by a declaration of the appellant, dismiss them as wealthy sex, and then a declaration by her IT person that recites that she told him certain things. And their claim is they do have a server. But it's secondhand hearsay that wouldn't be, we thought, wasn't admissible. So, again, we thought this just turned on the summary judgment standard that the evidence submitted. They're just trying to create a claim by contradicting themselves, jerking back from the 12B6. But even when they did that, the few sentences in the Morgan declaration aren't sufficient to actually create a question to the points they're arguing. There's nothing in this or anything the court could, without relying on things outside the record, put in to describe how any of this technology works or interplays with statutes. All we had was a couple of sentences on a declaration. We think it's insufficient to the standards, but that's for this court to decide. But let me ask you this. I asked this of the appellant as well. Apparently, the parties have never availed themselves to mediation in the Ninth Circuit. Is that correct? I don't remember rejecting mediation. I'm sorry, Your Honor. Did you do mediation? Did you do it? Yes, I would be happy to. Well, here's the thing. I guess from the standpoint, we're going to be prepared one way or the other. We've had oral argument. We're going to be prepared to decide this case. I would think, and we haven't conferenced on it, we haven't stated any views, and we're just asking questions of both sides. I'll state for myself, I think that both of you, if I were seated in either of your positions, would notice that maybe some of the questions we've asked, the answers can be considered in different ways by different people, and that in light of a statute that goes back in the 80s and all the technological changes. And also, this court's going to decide whether Morgan's declaration comes in or out, which depending on if the court views differently, will make a difference in the disposition here. So if this panel were to refer it to mediation, but then if it doesn't resolve in mediation, we decide the case as we see fit, that there's that at the heart. Obviously, you're both in a different position after you've gone to court for a while, and you hear questions that the panel's asking you. And I think, Hatley, occurred after you initially filed this. How long have you guys been going to court on this case? How long has it been going on? Your Honor, I think the divorce matters started in 2016, Your Honor. My firm's been involved since mid-2014. Are the parties divorced now? Yes, the parties are divorced, and the dissolution is on appeal. Okay, but that's not us. That's not us, right? That's insane. No, you're right. Yes, in Washington State, of course, yes. Okay. All right. Did you have anything? Do my colleagues have any additional questions of Mr. Schroeder or Schroeder? We don't appear to have additional questions. We've gone over your time. If you want to wrap up in 30 seconds, please do so. I don't believe I have anything further. Thank you very much. Thank you. Okay, Mr. Talquist, I'll give you two minutes for rebuttal. Great. I'll be brief. If the court looks at my reply brief, one of the things I mentioned is that one of the primary intentions of the Stored Communications Act is to protect the privacy of individuals from other parties, from third parties. The court needs to be mindful of the fact Andrea learned of this invasion in 2018. She had been out of the family home for two years. Her work email as a lawyer was being accessed for two years. Her private information was being used. Her whereabouts were being monitored. It created a horrible, horrible circumstance for her when she realized that this was going on. It was all unbeknownst to her. The privacy of the Storage Communications Act is to protect people, not only from the government, but protect people from other private individuals. She still has her job, doesn't she? She does. And the law firm initially was a party, but they're no longer a party? Correct. The law firm, at a 12B6 motion, the law firm's claim was dismissed. They elected not to proceed forward. The attorney representing Kevin at the time settled with Andrea to be dismissed. And then she proceeded forward with this claim with Kevin. And Kevin, frankly, has never really shown any interest in attempting to resolve anything. So the information that was gathered for two years after she left the house was used in the divorce proceeding. And anecdotally, Judge Lorman locally found him to be a stalker and issued a restraining order. But this is serious. We cannot allow or have a situation where a lawyer's email is being accessed by an estranged spouse. No one doubts the seriousness of this. Please don't ever think that for a second. But we've got to limit it to what we have in front of us. And what we have in front of us is summary judgment and the Storage Communications Act and a declaration whether it should have come in or not. So for both of the parties, and I know I would speak for my colleagues, of course, every case is very serious to us. But both of you have it. This is not the family law court. This is the case that we've got serious legal issues. And so that's we're not, you know, we're not looking to affect the family law issue. We're looking to apply the law correctly. So I agree over. So in 30 seconds, why don't you wrap up? Great, Your Honor, I agree with you. If you look at the Morgan declaration, it's sufficient to create an issue of fact under the under the SCA. And I just think this needs to be sent back to the district court. So thank you for your time. Thank you both for your argument in this matter. This case will stand submitted.
judges: Gilman, Hawkins, Callahan